UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

BRUEN L. CRAIG                                                                    PLAINTIFF

V.                                                        CIVIL ACTION NO: 5:12-CV-95-DPJ-FKB

CITY OF YAZOO CITY, MISSISSIPPI;
MCARTHUR STRAUGHTER, CHARLES
MICKEY O'REILLY, JACK D. VARNER,
CLIFTON L. JONES, AUBRY BRENT, DANNY
NELLY, individually; and JOHN DOES I-V                                DEFENDANTS

ORDER

This § 1983 equal-protection action is before the Court on Defendants' Motion for

Summary Judgment [50].  Plaintiff has responded in opposition [55].  Having fully considered

the parties' submissions and the relevant authority, the Court finds that the motion should be

granted.

I.        Facts and Procedural History

This suit springs from a zoning dispute between Plaintiff Bruen Craig and Yazoo City,

Mississippi, regarding a portable building Craig installed on his residential property in 2003.

Craig's neighbor, Vay McGraw, orally complained about the building during a May 24, 2010,

meeting of the Board of Aldermen (the "Board").  The Mayor and the Board "noted that staff

should review this matter and take necessary action to assure compliance with its ordinance."

Pl.'s Resp. [56] Ex. O, May 24, 2010 Board Minutes.  Defendant Danny Neely, the City's Code

Enforcement Officer, then investigated and informed Craig in a July 20, 2010, letter that the

2003 building violated the ten-foot setback requirement, which constituted a misdemeanor

offence.  Pl.'s Resp. [56] Ex. U.  Neely wrote that Craig had "fifteen (15) days to rectify this

zoning violation or provide evidence to the contrary." *Id.*  He warned that "[f]ailure to comply will result in legal action." *Id.*

Craig neither remedied the violation nor provided evidence that he was in compliance. Instead, Craig submitted 302 complaints regarding zoning violations he saw throughout Yazoo City, many of which addressed the same code section the City invoked against Craig.  Craig distributed copies of his complaints about these zoning violations, including those by the Mayor and Alderman O'Reilly, to the public in attendance at a August 23, 2010 meeting of the Board. At that same meeting, the Board "authorized the City Attorney to retain a Special Prosecutor for the Bruen Craig litigation." *Id.*, Ex. AA, Board Minutes.

Approximately one week later, on September 1, 2010, Neely filed a criminal affidavit against Craig in Municipal Court.   Craig appeared and pleaded *nolo contendere*, but the case was later dismissed on *de novo* appeal because the two-year statute of limitations for misdemeanors had expired.

Craig filed this Complaint on July 16, 2012 asserting claims under 42 U.S.C. § 1983 and various state-law theories.  In it, he names as defendants Yazoo City; Mayor McArthur Straughter; Aldermen Charles O'Reilly, Jack Varner, Clifton Jones, and Aubry Brent, Jr.; and Neely.  The individuals are named in their official and individual capacities.  Defendants filed the instant motion for summary judgment on all claims.  The Court has personal and subject matter jurisdiction.

II.     Standard of Review

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the

moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

III.    Analysis

Craig's core federal cause of action is that Defendants violated his right to equal protection under the Fourteenth Amendment to the United States Constitution. He also claims Defendants violated his right to procedural and substantive due process under the Fourteenth and

Fifth[1] Amendments and the Eighth Amendment protection from excessive fines.  In addition to these federal claims, Craig also makes state claims for deprivation of due process under the Mississippi Constitution, gross negligence, outrageous conduct, malicious prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress.  While this Order will examine each claim, it focuses attention on Craig's more substantial arguments.[2]

A.      Federal Claims

1.      Equal Protection

a.      Class of One Theory

A class-of-one equal-protection claim is established "where the plaintiff [shows] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Craig alleges in his Complaint that Defendants prosecuted him but have "not subjected to such criminal prosecutions similarly situated individuals."  Pl.'s Compl. [1] ¶ 21.  He explains in his Response to Defendants' motion that he was treated less favorably than the people responsible for the 302 zoning violations he reported to the Board.

As an initial point, Craig's argument relies on an expanded version of his original claim.  The Complaint states that Defendants treated the comparators better by failing to prosecute them.  *See, e.g.*, *id*.  But Craig now argues that the Complaint goes further, asserting disparate treatment

---

[1]Craig has withdrawn his Fifth Amendment claim.  Pl.'s Mem. Opp. Summ. J. [58] at 30.

[2]The Court feels compelled to mention that the parties sometimes overstated the record evidence or made arguments unsupported by authority.  Though the Court has no duty to search the record for evidence not cited in the memoranda, it has made an effort to consider the record as a whole and all arguments presented.  Those not mentioned in this Order would not have altered the ruling.

"both as to selective *enforcement* . . . and as to selective *prosecution*."  Pl.'s Mem. [58] at 18 (citing Compl. [1] ¶ 20) (emphasis added).  In other words, the claim also includes disparate treatment with respect to the initial order that he comply with the zoning ordinance.

A fair reading of the Complaint reveals no such claim.  Paragraph 20 of the Complaint—upon which Craig exclusively relies—never mentions "enforcement."  Instead, it states that "Defendants' criminal prosecution of its land use, or zoning ordinance, gives rise to a cause of action against Defendants . . . ."  Compl. [1] ¶ 20.  It then explains why.  And that reading is consistent with the rest of the Complaint.  *See* ¶¶ 18 (averring that Defendants elected not to "criminal prosecute[] similarly situated individuals . . .") and 21 (averring that others similarly situated were "not subject to such criminal prosecution . . .").  Claims related to the initial order to comply are not, therefore, properly before the Court.  *See Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." (citation omitted)).

Alternatively, even the expanded claim fails because Craig offers no legitimate comparator or proof that Defendants acted irrationally.  Determining whether a comparator is similarly situated requires consideration of "'the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant in making the challenged decision.'"  *Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 234 (5th Cir. 2012) (citation omitted).  "The 'similarly situated' requirement must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently

5

from another.'" *Lindquist v. City of Pasadena, Tex.*, 656 F. Supp. 2d 662, 688 (S.D. Tex. 2009)

(citing *Cordi-Allen v. Conlon*, 494 F.3d 245, 251–52 (1st Cir. 2007)).

Looking first to the pleaded claim that the 302 individuals were not subjected to prosecution, Craig has offered no evidence that any of these individuals refused the City's invitation to either comply with a zoning order or demonstrate why they are not required to comply. They were not, therefore, similarly situated as to the prosecution.

That leaves Craig's belated claim that the City treated the 302 more favorably in never ordering them to comply with various zoning ordinances. It should be noted that not all of the 302 alleged comparators committed the same zoning violation, and Craig's Response never specifically identifies any property owners with details regarding the alleged similarities. Those that allegedly violated different ordinances are not similarly situated. *Lindquist*, 669 F.3d at 234–35 (noting dissimilarity because different ordinances were invoked).

Assuming though that some of the individuals committed the same violation, the circumstances remain dissimilar. In Craig's case, his next-door neighbor complained that his building was too close to her property line—which it was. But there is no evidence that any neighbors were concerned about the 302 cases Craig brought to the Board's attention. This presents a material distinction. A fundamental difference exists between complaints submitted by concerned neighbors—who would be personally affected by the alleged violation—and mass complaints submitted by a citizen with a grievance against the City hoping to avoid enforcement. These are factors an objectively reasonable decisionmaker "would have found relevant in making

the challenged decision." *Id.* at 234.  Craig has therefore not met the "similarly-situated" element of his class-of-one claim, which fails on that basis alone.[3]

Craig's claim likewise fails the second prong because the enforcement and prosecution decisions have a rational basis—the allocation of limited resources to enforce actual complaints by affected neighbors.  Craig argues first that this was not the real reason for the decision.  Craig's argument misses the point.  To prevail on this claim, Craig "must carry the heavy burden of negativing *any reasonably conceivable* state of facts that could provide a rational basis for their differential treatment."  *Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 387 (5th Cir. 2008) (emphasis added) (citation and punctuation omitted).  This rule exists because "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."  *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993).  "Where there are 'plausible reasons' for [governmental] action, our 'inquiry is at an end.'"  *Id.* (citation and punctuation omitted).   And "it is immaterial that [the proffered reason] . . . was not *actually* relied upon by the decisionmakers or that some *other* nonsuspect irrational factors may have been considered."  *Reid v. Rolling Fork Pub. Util. Dist.*, 854 F.2d 751, 754 (5th Cir. 1988) (citations omitted).

Craig then argues that the resource-allocation basis is not rational because it would confuse citizens and "is itself violative of constitutional rights of the citizens of Yazoo City."  Pl.'s Mem. Opp. Summ. J. [58] at 39.  Aside from the conclusory nature of these arguments, whether governmental action is confusing is hardly grounds for relief.  Regardless, there is nothing confusing about it.  And Craig has not otherwise shown why it is "violative of

---

[3]Because the expanded claim would likewise fail, leave to amend would be futile.

constitutional rights" as he argues. *Id*. It makes perfect sense to focus limited resources on actual complaints by affected neighbors. *Cf. Carson v. Johnson*, 112 F.3d 818, 822 (5th Cir. 1997) (noting that preservation of scare governmental resources provides rational basis for decision). Although Craig testified that it was not fair to pursue the complaint against him and not the others, even he recognized the difference between a zoning violation where no neighbor complains and his "situation where the neighbor did complain . . . ." Craig Dep. at 150. Craig's class-of-one claim cannot survive Defendants' motion.

b. Selective-Enforcement Theory

To establish a claim for selective enforcement under the Equal Protection Clause, "a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 (5th Cir. 2000).[4]

Craig alleges the following improper motives: (1) the McGraws' involvement in the town's politics and business and Craig's newcomer status; (2) the Board's distaste for being opposed; (3) retaliation for 302 complaints Craig submitted and embarrassing the Board at the meeting; (4) racial animus by McGraw because Craig has two foster children he describes as "bi-racial"; and (5) the desire to prevent the exercise of Craig's First Amendment rights. Craig's assertions regarding all of these arguments are highly speculative. *See TIG Ins. Co.*, 276 F.3d at 759 (holding that conclusory allegations, speculation, unsubstantiated assertions are not

---

[4]In *Beeler v. Rounsavall*, the Fifth Circuit listed these concerns, but then added that "[i]t must be shown that the selective enforcement 'was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" 328 F.3d 813, 817 (5th Cir. 2003) (citation and punctuation omitted). Craig has not shown any of these three standards.

sufficient to avoid summary judgment).  But even assuming they were sufficiently supported

with record evidence, they are not legally sufficient.

The most cogent legal theory Craig offers in support of the first three arguments is that

some jurisdictions recognize personal vindictiveness by governmental actors as providing a basis

for an equal-protection claim.  *See Esmail v. Macrane,* 53 F.3d 176, 178 (7th Cir. 1995) (Posner,

J.,) (recognizing this form of selective-enforcement).  Though the Fifth Circuit has acknowledged

the possibility of such a claim, it has neither applied that theory nor decided whether it could

prevail absent "some other class-based discrimination."  *Bryan,* 213 F.3d. at 277 n.18.  And at

least one Fifth Circuit panel seemed skeptical that mere vindictiveness is enough.  *See Beeler*,

328 F.3d at 818 (noting that text of Equal Protection Clause and its history "suggests that

personal vindictiveness by itself is insufficient as an improper motive in the absence of some

other class- or group-based discrimination." (quoting Timothy Zick, Angry White Males: The

Equal Protection Clause and "Classes of One," 89 Ky. L.J. 69, 75 (2000/2001))).  Given the

paucity of support, the Court concludes that proof of class-based discrimination is still required.

*See Miller v. City of E. Mountain, Tex*., No. 6:10CV21, 2011 WL 4899998, at *9 (E.D. Tex. Oct.

14, 2011) ("In the absence of case law clearly supporting a selective enforcement claim based

solely on personal vindictiveness, the Court is not inclined to stretch the existing case law to fit

the circumstances presented in this case.").

Craig has not demonstrated class-based discrimination.  The closest he comes is his

assertion that these events were tinged by racial animus.  But that assertion rests on the purely

speculative assertion that McGraw (whose race is not stated) complained about the zoning

violation because Craig (Caucasian) had two bi-racial foster children.  Even if McGraw's

motivation were factually supported, there is no evidence Defendants knew about any of this or that it affected their decision.  Craig also fails to offer legal authority to support this theory.

Before moving to the final improper motivation Craig alleges, one final word about *Esmail* is in order.  While that court recognized a selective-enforcement claim based on personal vindictiveness, it nevertheless held that plaintiffs must prove "that the action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective."  *Esmail*, 53 F.3d 176, 180 (7th Cir. 1995). The problem for Craig is that the wheels began rolling toward prosecution before he irritated the Board.  In May of that year, the Board voted to investigate Craig's building and "assure compliance with" its ordinance.  Pl.'s Resp. [56] Ex. O, May 24, 2010 Board Minutes.  Things progressed in July 2010 when Neely wrote Craig that his actions constituted a misdemeanor and would result in "legal action" if he did not rectify the violation or provide evidence to the contrary.  Pl.'s Resp. [56] Ex. U.  All of this occurred before Craig began complaining and publicly confronted the Board in August 2010.  The City had a "legitimate state objective" in enforcing its zoning ordinances, and Craig cannot show that its actions were "wholly unrelated" to that interest given this timeline.

Craig's First Amendment argument—that Defendants acted to stop him from presenting his complaints—fails for this same reason.  It also suffers from a more significant infirmity—the claim should be considered under the First Amendment, not the Equal Protection Clause.  Craig attempts to state his selective-enforcement claim by showing the actions were motivated by the "exercise of constitutional right," *i.e.*, his First Amendment free speech right.  *Bryan*, 213 F.3d at 277.  If such a claim could exist under the Equal Protection Clause, then some proof of disparate

10

treatment would still be necessary.  *See L & F Homes & Dev., L.L.C. v. City of Gulfport, Miss.*,
— F. App'x —, 2013 WL 4017711, at *6 (5th Cir. Aug. 7, 2013) (noting lack of comparator in
selective-enforcement claim); *Williams v. Riley,* 275 F. App'x 385, 390 (5th Cir. 2008) (holding
in selective-enforcement context that "a 'class-of-one' plaintiff must, at a minimum, show he has
been intentionally treated differently from others similarly situated" (citation and quotation
omitted)).  *See also Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001)
(interpreting *Esmail* and requiring proof plaintiff was treated "differently than another who is
similarly situated" (citing *Zeigler v. Jackson*, 638 F.2d 776, 779 (5th Cir. 1981) ("[T]he essence
of the equal protection requirement is that the state treat all those similarly situated similarly."))
(other citations omitted)), *overruled on other grounds by Pignanelli v. Pueblo Sch. Dist. No. 60*,
540 F.3d 1213 (10th Cir. 2008); *Harlen Associates v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d
Cir. 2001) (requiring proof of disparate treatment in addition to improper motive).

     If no proof of a similarly situated comparator is needed—and there is none in this
case—then there would be no legal difference between Craig's equal-protection claim and a
garden variety First Amendment retaliation claim.  *See, e.g.*, *Keenan v. Tejeda*, 290 F.3d 252,
258–61 (5th Cir. 2002) (explaining First Amendment retaliation under § 1983).   And because
the First Amendment speaks more directly to free speech, the claim should be considered under
that amendment.  *See Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437, 444 (5th Cir. 2001)
(refusing to recognize substantive-due-process claim "[b]ecause the First Amendment provides
an adequate source of constitutional protection in this case") (citing *Graham v. Connor*, 490 U.S.
386, 395 (1989)).  Craig never pleaded a First Amendment claim and his equal-protection claim
based on free speech is dismissed.

2.       Substantive Due Process

To succeed on a substantive-due-process claim, a plaintiff must make two showings. "First, he must allege a deprivation of a constitutionally protected right." *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006).  Then, plaintiff must show that the government action in question was not "rationally related to a legitimate government interest." *Id.*  Craig's substantive-due-process claim is not properly brought because it is nothing more than his "equal protection claim recast in substantive due process terms." *Lindquist*, 525 F.3d at 387.  And even assuming Craig has properly brought his claim, the alleged deprivation is not apparent. *See Bryan*, 213 F.3d at 274 ("In order to establish either a substantive or a procedural due process violation by claiming denial of a property right, Bryan must first establish a denial of a constitutionally protected property right." (citations omitted)).  Craig still has his building.  And in any event, Defendants' decision to allocate zoning enforcement resources to those violations that are the subject of a neighbor's complaint is rationally related to a legitimate government interest.  Craig's substantive-due-process claim fails.

3.       Procedural Due Process

Procedural due process "imposes constraints on governmental decisions that deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (citations omitted).  "[A] State must provide an individual with notice and opportunity to be heard before the State may deprive him of his property." *Jones v. Flowers*, 547 U.S. 220, 240 (2006) (citations omitted).  "To bring a procedural due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action

12

resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001) (citation omitted).

Craig never lost his property or liberty.  He also received adequate notice.  On the latter point, Craig alleges lack of notice and opportunity to be heard at the May 24, 2010 Board meeting.  But he admits Defendants made no decision at that time whether the building violated the zoning ordinance.  Pl.'s Mem. Opp. Summ. J. [58] at 5.  Craig received notice of the violation after the investigation and was given fifteen days to rectify the violation or explain why no action should be taken.  Pl.'s Resp. [56] Ex. U, Neely Letter.  He did neither.  Finally, Defendants provided adequate notice and an opportunity to be heard in the criminal prosecution, which Craig successfully defended.  His procedural-due-process claim is dismissed.[5]

4.      Eighth Amendment

Craig's attempt to invoke the Excessive Fines Clause of the Eighth Amendment, which is incorporated through the Fourteenth Amendment, is frivolous.  According to Craig, "*[h]ad* the City collected a fine from Craig . . . it would have been excessive."  Pl.'s Mem. Opp. Summ. J. [58] at 31.  Clearly, no fine or other punishment was ever imposed on Craig, and Craig cannot sustain an Eighth Amendment claim based purely on a hypothetical.  Craig's other responses—made without any cited authority—also fail.  According to him, his fees and appeal bonds, which were refunded, constitute an excessive fine.  But Craig was not subject to any fine, bail, or punishment, and his Eighth Amendment claim is dismissed.

---

[5] Craig's due-process claims under the Mississippi constitution fail for the same reasons. *See Riverside Traffic Sys., Inc., v. Bostwick*, 78 So. 3d 881, 888 (Miss. 2011) ("This clause guarantees 'minimum procedural due process . . . consisting of (1) notice and (2) opportunity to be heard.'") (quoting *Miss. Gaming Comm'n v. Freeman*, 747 So. 2d 231, 246 (Miss. 1999)).

5.      Failure-to-Train Theory

To the extent Craig asserts a claim based on a failure-to-train theory, that claim fails.  A municipality can be held liable under § 1983 for constitutional violations caused by its employees under a failure-to-train theory. *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011).  To succeed on such a theory, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citations omitted).  In this case, Craig fails to show a constitutional deprivation related to the subject building, and he further fails to establish deliberate indifference.

6.      Qualified Immunity

The individual defendants seek qualified immunity as to Craig's § 1983 claims. "Qualified immunity protects government officials from money damages unless a plaintiff shows: (1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)).  As discussed above Craig has not shown that Defendants violated a constitutional right, so the individual defendants are entitled to qualified immunity.[6]

---

[6]Had Craig shown disparate treatment, then qualified immunity would not exist because the law in this respect is clearly established. *See Nance v. New Orleans & Baton Rouge S.S. Pilots' Ass'n*, 174 F. App'x 849, 854 (5th Cir. 2006) (noting in contrast that class-of-one equal-protection rights are clearly established in zoning context).  But to the extent the claim was based on personal vindictiveness, that claim is not clearly established and qualified immunity would

B.      State Claims

1.      Malicious Prosecution

There is no dispute Craig built his shed less than ten feet from McGraw's property line.

The placement violated §500.03-01 of the Yazoo City, Mississippi Zoning Ordinance, a

misdemeanor offense.  Craig initially pleaded *nolo contendere* to the charge, but prevailed on *de

novo* appeal because Mississippi's two-year statute of limitations for misdemeanor offenses had

expired.  Miss. Code Ann. § 99–5–1.  Craig now asserts that the prosecution was malicious.

Under Mississippi law, a party claiming malicious prosecution must establish the

following elements:

> (1) the institution or continuation of original judicial proceedings, either criminal
> or civil;
> (2) by, or at the insistence of the defendants;
> (3) the termination of such proceeding in plaintiff's favor;
> (4) malice in instituting the proceedings;
> (5) want of probable cause for the proceedings; and
> (6) the suffering of damages as a result of the action or prosecution complained of.

*Bearden v. BellSouth Telecomm., Inc.*, 29 So. 3d 761, 764 (Miss. 2010).  In this case, the parties

primarily dispute the third and fifth elements, whether probable cause existed and whether the

case was terminated in Craig's favor.  More specifically, the parties dispute the impact of the

statute of limitations.[7]

---

apply.  *See Beeler*, 328 F.3d at 818; *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565
(2000) (declining opportunity to adopt *Esmail* and ruling on other grounds).

    [7]Craig makes three additional arguments that appear here and in other portions of his
memorandum: (1) the City should not have prosecuted because the statute of limitations for the
ordinance expired; (2) others were not prosecuted; and (3) the City did not have records from
2003 indicating whether Craig had a variance to build.  First, the ordinance did not have its own
statute of limitations, and in any event, the criminal limitations is an "affirmative defense that
may be waived."  *Conerly v. State*, 607 So. 2d 1153, 1158 (Miss. 1992).  Second, the City is not

No Mississippi court has ever examined whether dismissal based on a statute of limitations satisfies the elements for malicious-prosecution. The Court must therefore make an "*Erie*-guess," and predict how Mississippi would rule. *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 199 (5th Cir. 2006) (citation omitted) (noting that courts consider factors like "decisions of the [Mississippi] Supreme Court in analogous cases" and rulings from other courts).

In *Bearden*, the Mississippi Supreme Court explored the favorable-termination element. There, the charges were dropped for lack of jurisdiction. 29 So. 3d at 764. The Court identified "the pivotal question" as being whether the dismissal "properly reflects on the merits of a criminal action and therefore qualifies as a termination in favor of the plaintiff." *Id.* (quotation omitted). More to the point, the court noted commentary that dismissals are on the merits "only when their final disposition is such as to indicate the innocence of the accused." *Id.* (citing Restatement (Second) of Torts, § 660 cmt. a (1977)). The court then turned to other jurisdictions observing "the 'almost universal rule' . . . that a dismissal on procedural grounds does not reflect on the merits and, therefore, cannot constitute a favorable termination for malicious-prosecution purposes." *Id.* at 766 (citing *Parrish v. Marquis*, 172 S.W.3d 526, 532 (Tenn. 2005)). *Bearden* concluded that the jurisdictional dismissal did not satisfy the prima facie case because it "neither indicate[d] Bearden's innocence, nor [was] it inconsistent with Bearden's guilt." *Id.*

The statute-of-limitations defense in this case is no different. It says nothing of Craig's innocence—he admits the building was placed within the setback. And because the applicable

---

required to prosecute all violators. *See Parude v. City of Natchez*, 72 Fed. App'x 102, 105 (5th Cir. 2003). Finally as to the missing records, Craig would know whether he received a variance—something he has never suggested—and the City gave him 15 days to present such evidence before he was charged. The lack of records is hardly relevant.

limitations law is found in section 99–5–1 of the Mississippi Code and is not embedded in the zoning ordinance at issue, it is considered a procedural bar rather than substantive law. *Christmas v. State*, 700 So. 2d 262, 266–67 (Miss. 1997) (holding that such limitations are procedural); *see also James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 535 (1991) (describing statutes of limitations as procedural bars). Dismissal based on this procedural bar fails to satisfy the third element of the prima facie case. *Bearden*, 29 So. 3d at 766.

Other courts have reached this same conclusion. In *Lackner v. LaCroix*, California concluded that "[a] bar raised by the statute of limitations does not reflect on the merits of the action." 602 P.2d 393 (Cal. 1979). Craig dismisses *Lackner* suggesting that Mississippi would not follow a decision from California, but the Mississippi Supreme Court approvingly cited *Lackner* in *Bearden*. 29 So. 3d at 765. Much closer to home, Judge Tom S. Lee reached this same conclusion in *Harried v. Forman Perry Watkins Krutz & Tardy*, where the jury returned a general verdict that did not distinguish between the merits and the defendant's statute-of-limitations defense. 813 F. Supp. 2d 835, 842 n.5 (S.D. Miss. 2011). Citing *Breaden*, Judge Lee held that "[w]hile the former would obviously constitute a favorable termination on the merits, the latter would not." *Id*. This Court agrees. Craig's malicious-prosecution claim should be dismissed.

2.    Intentional and Negligent Infliction of Emotional Distress

Craig's response conflates two separate issues: the measure of damages for emotional distress resulting from his substantive claims and the independent torts of intentional and negligent infliction of emotional distress. Defendants seek summary judgment on both, and to the extent Craig asserts such claims, they fail.

17

A claim for intentional infliction of emotional distress ("IIED") requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bowden v. Young*, - - So.3d - -, 2013 WL 4759584, at *8 (Miss. 2013).   The actions Craig says caused his emotional distress were the prosecution, publication in the newspaper that he committed a crime, and two threats by Aldermen Varner and O'Reilly after Craig began filing complaints of zoning violations throughout the city.   These instances fall below the level of outrageous conduct required to survive summary judgment on an IIED claim.

Starting with the claims related to the prosecution, probable cause existed because the building was within the set back and Craig refused to take corrective action or accept the City's invitation to demonstrate his right to maintain the property as is.   Pursuing legal actions where probable cause exists is not outrageous.

As for the alleged intimidation, Craig claims that Alderman O'Reilly made "threat[s that] included a statement that he was not afraid of anything and would 'stick a rattlesnake in his pocket' and if Craig wanted to meet him at 2:00 in the morning to settle it, just name the place and time and he would be there."  Pl.'s Mem. [58] at 37.  Turning to Alderman Varner, Craig complains that he "was visibly angry, arrogant and sarcastic when stating:  to Craig, 'You're out of your league, and we're not going to hear any of these complaints anyway.  You don't know what you're getting into.'" *Id*.  These statements are classic examples of "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities" that are not sufficient to state a claim of IIED.  *Clark v. Luvel Dairy Prods., Inc.*, 821 So. 2d 827, 831 (Miss. Ct. App. 2001).  *Compare Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004)

18

(finding that plaintiff's claims that employer called him a thief and made remarks about his Italian heritage were not so extreme and outrageous as to justify redress), *and Speed v. Scott*, 787 So. 2d 626 (Miss. 2001) (holding that employer's repeated references to plaintiff as a liar and a thief did not constitute a claim for IIED), *with Smith v. Malouf*, 722 So. 2d 490 (Miss. 1998) (finding that a plot by an unwed mother and her parents to hide the child from the father and arrange for its adoption constituted a claim for intentional infliction of emotional distress). Craig's IIED claim is therefore dismissed.

A plaintiff may not recover for a claim of negligent infliction of emotional distress ("NIED") without showing that he or she suffered a physical injury. *Wilson v. GMAC*, 883 So. 2d 56, 65 (Miss. 2004). The only physical harms Craig points to are sleepless nights and headaches. Pl.'s Mem. Opp. Summ. J. [58] Ex. B, Craig Dep. at 232; *id.*, Ex. Z, Williams Aff. ¶ 7. He never saw a doctor or psychologist. *Id.*, Ex. B., Craig Dep. at 237. These vague and undocumented injuries are not sufficient to survive summary judgment on an independent claim for NIED. *See, e.g.*, *Evans v. Miss. Dep't of Human Servs.*, 36 So. 3d 463, 476 (Miss. Ct. App. 2010) (affirming summary judgment where plaintiff claimed sleeplessness and general worries). Craig's NIED claim is dismissed.[8]

            3.      Outrageous Conduct; Negligence; Gross Negligence

Defendants invoke immunity as to Craig's remaining state claims under the Mississippi Tort Claims Act ("MTCA"). The MTCA provides immunity for "[a] governmental entity and its employees acting within the course and scope of their employment or duties . . . for any claim . . .

---

[8]The NIED claim would also fail for the reasons stated in the next section of this Order.

[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function."  Miss. Code Ann. § 11-46-9(1)(d).

Craig responds—without citation to any cases—that Defendants were not performing a discretionary function when deciding to enforce the ordinance against him.  To determine whether a function is discretionary, the Court "first must ascertain whether the activity in question involved an element of choice or judgment," and if so, "whether that choice or judgment involved social, economic, or political-policy consideration."  *Pratt v. Gulfport-Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 72 (Miss. 2012) (internal quotation marks and citation omitted).  The public-policy prong "does not require proof of the thought processes of pertinent decision makers."  *Q.A., ex rel. D.W. v. Pearl Pub. Sch. Dist.*, 87 So. 3d 1073, 1078 (Miss. Ct. App. 2011).  Instead, "the focus is on the nature of the actions taken, and whether they are susceptible to policy analysis."  *Id.*

Craig's claims are rooted in Defendants' choice to enforce the zoning ordinance against him.  Such a choice involves various policy considerations such as how to allocate limited enforcement resources and how to evaluate and prioritize complaints from citizens.  Defendants were therefore performing a discretionary function and are entitled to immunity from Craig's state-tort claims.

IV.     Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.  A separate judgment will be entered in accordance with Federal Rules of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 28th day of October, 2013.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

20